FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 JAN 22   AM 10: 01

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **GOLDMAN, WALKER, LLC.** | * | |
| **Plaintiff,** | * | |
| v. | * | **Case No.: GJH-13-03698** |
| **S. TARIQ SHAHAB, M.D.** | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

This dispute revolves around Digirad Imaging Solutions, Inc. ("Digirad") and Defendant

Dr. S. Tariq Shahab's contract for the leasing of medical imaging equipment. *See* ECF No. 28-3.[1]

This Memorandum and accompanying Order address Plaintiff's Motion to Confirm Arbitration

Award. *See* ECF No. 28. The Court finds that a hearing is unnecessary. *See* Local Rule 105.6.

For the reasons stated below, Plaintiff's Motion to Confirm Arbitration Award, ECF No. 28, is

GRANTED, and Plaintiff is awarded attorney's fees and costs.

**I.    BACKGROUND**

Effective January 16, 2008, Defendant and Digirad entered into an Equipment and

Personnel Lease (the "Lease") in which Digirad agreed to provide Defendant with a multi-head

nuclear imaging camera and certified personnel in exchange for rent payments. ECF No. 28-2 at

4. Pursuant to the Lease, on scheduled dates, a technician would bring, set up, and operate the

camera at Defendant's office. *Id.* According to Plaintiff, Defendant failed to pay seven invoices

---

[1] Digirad subsequently assigned its interest to Goldman, Walker, LLC ("Goldman"), who has
been substituted as Plaintiff in this case. *See* ECF No. 20.

that Digirad had submitted to Defendant between April and October of 2011. *Id.* at 7. When Digirad was not successful in obtaining payment, it made a demand for payment and placed the account in collections. *Id.*

The Lease provides that all disputes "shall be resolved by binding arbitration before a single arbitrator sitting on the closest JAMS/Endispute (JAMS) panel to Lessor's home office servicing Lessee and selected in the sole discretion of the JAMS administrator, unless the parties agree otherwise." ECF No. 28-3 at 6. Digirad filed a demand for arbitration on March 20, 2013. ECF No. 28-2 at 7–8. Defendant voiced his opposition to the proceeding and did not attend the scheduled conference call or submit an arbitration brief. ECF Nos. 28-2 at 8–9 & 28-4. An arbitration hearing took place before an arbitrator, retired United States District Court Judge Benson Legg, on November 11, 2013 at the JAMS office in Greenbelt, Maryland. ECF No. 28-2 at 2. The day before, Defendant sent an email to a JAMS' employee stating that he would not be attending the arbitration because of important work at the hospital. ECF No. 30-2. Indeed, Defendant failed to attend. ECF No. 28-2 at 2. On December 4, 2013, the arbitrator awarded Digirad $38,200.00 ($24,800.00 in principal, $3,343.90 in interest through November 11, 2013, $2,416.10 for the cost of the arbitration, and $7,640.00 in attorney's fees). *Id.* at 3. The arbitrator also awarded interest at the rate of six percent on the principle sum owed ($24,800) from November 11, 2013 until the date that the principal sum is paid in full. *Id.*

On December 6, 2013, Digirad filed a petition to confirm the arbitration award in this Court. ECF No. 1. Defendant, who is representing himself, filed an answer on January 6, 2014. ECF No. 5. After a conference call, this case was referred to a Magistrate Judge for a settlement conference, and the petition to confirm the arbitration award was denied without prejudice. ECF No. 12. The settlement discussions were not successful. *See* ECF Nos. 14 & 15. Digirad

subsequently assigned the debt to Goldman, Walker, LLC ("Goldman"), and Goldman was

substituted as Plaintiff. *See* ECF No. 20. After a brief period of discovery, *see* ECF No. 19,

Plaintiff filed a second motion to confirm the arbitration award on November 21, 2014.  ECF No.

28. Defendant filed his opposition on December 4, 2014. ECF No. 30.[2] For the reasons discussed

below, the Court will grant Plaintiff's motion.

## II.    STANDARD OF REVIEW

Under the Federal Arbitration Act, a court may confirm an arbitration award "[i]f the

parties in their agreement have agreed that a judgment of the court shall be entered upon the

award made pursuant to the arbitration . . ." 9 U.S.C. § 9.[3] The Court must confirm the award

unless it vacates, modifies, or corrects the award under 9 U.S.C. §§ 10 or 11. *Id.* "Federal courts

may vacate an arbitration award only upon a showing of one of the grounds listed in the Federal

Arbitration Act, or if the arbitrator acted in manifest disregard of law." *Apex Plumbing Supply v.*

*U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998). The situations permitting a court to

vacate an arbitration award are found at 9 U.S.C. § 10(a), which provides:

> In any of the following cases the United States court in and for the district
> wherein the award was made may make an order vacating the award upon the
> application of any party to the arbitration--
> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of
> them;

---

[2] Defendant titled his opposition a "Motion to Dismiss Request for Arbitration Award." ECF No.
30.

[3] If the parties agree that arbitration is binding, it precludes litigation and provides the Court with
jurisdiction to confirm the arbitration award under the Federal Arbitration Act, 9 U.S.C. § 9. *See*
*Rainwater v. Nat'l Home Ins. Co.*, 944 F.2d 190, 192 (4th Cir. 1991). Here, the parties explicitly
agreed that all disputes arising out of or related to the Lease "shall be resolved exclusively by
binding arbitration . . ." ECF No. 28-3 at 6. Thus, the parties agreed that arbitration would be
binding and the Court has jurisdiction to confirm the award.

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"The exceptions to confirmation of awards are strictly limited to avoid frustrating the fundamental purpose of arbitration, *i.e.*, quick dispute resolution and avoidance of the expense and delay of court proceedings." *Jih v. Long & Foster Real Estate, Inc.*, 800 F.Supp. 312, 317 (D. Md. 1992) (citations omitted). In essence, the Court's role in reviewing an arbitrator's decision is "to determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *Wachovia Securities, LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012) (citations and internal quotation marks omitted). "The party moving to vacate the award bears the burden of proof, and the showing required to avoid summary confirmation is high." *Jih*, 800 F.Supp. at 317 (citation and internal quotation marks omitted).

## III.   DISCUSSION

### A.  Arbitration Award

Defendant raises two grounds for opposing confirmation of the arbitration award that are worthy of discussion. First, Defendant asserts that the arbitration was held at an improper location. ECF No. 30 at 2. The Lease required that arbitration be held at "the closest JAMS/Endispute (JAMS) panel to Lessor's home office servicing Lessee." ECF No. 28-3 at 6. Defendant contends that Digirad's only offices are in California and Delaware. ECF No. 30 at 3. He derives this belief from the Lease, which states that Digirad is incorporated in Delaware and that any notices should be mailed to a California address. *See* ECF No. 28-3 at 1 & 6.

4

Under 9 U.S.C. §10(a)(4), a court may vacate an arbitration award if the arbitrator exceeded his power. However, in the context of contract interpretation, "[a]s long as the arbitrators are even arguably construing or applying the contract . . . their awards will not be disturbed." *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 861 (4th Cir. 2010) (citation and internal marks omitted). Here, the Lease provides that the arbitration will take place before the JAMS panel closest to Digirad's *home office servicing Lessee*. ECF No. 28-3 at 6. This language contemplates multiple servicing offices. Thus, Defendant's interpretation of the Lease is not the only interpretation; one may reasonably interpret the Lease to provide that Defendant is incorporated in Delaware, has an office in California, and has other "servicing offices" across the country. Plaintiff asserts that Digirad serviced Defendant's Falls Church, Virginia office from its Lithicum, Maryland office, ECF No. 28-1 at 1, and the arbitrator found, looking at the Lease, that the JAMS office in Greenbelt, Maryland was the "appropriate office under Section 20 of the Standard Terms and Conditions." ECF No. 28-2 at 8. Notably, although Defendant objected to the arbitration process, Defendant did not object to the location of the arbitration when this case was before the arbitrator. *See* ECF Nos. 28-4 & 30-2. After being given time for discovery, Defendant has neither presented facts showing that Digirad serviced his medical office from Delaware or California, nor presented facts showing that Digirad's Lithicum, Maryland office was not Digirad's home office that serviced Defendant's medical practice in Falls Church, Virginia. Thus, Defendant has not produced any evidence to show that the arbitrator exceeded his power under 9 U.S.C. 10(a)(4) in interpreting that Greenbelt, Maryland was the proper location for the arbitration pursuant to the Lease.

Defendant also argues against confirmation of the arbitration award because the arbitrator failed to postpone the arbitration. ECF No. 30 at 2. In support, Defendant submits an email from

him to a JAMS' employee—sent at 10:00 p.m. on November 10, 2013, the day before the arbitration—which states:

> I have not received any reply from you or the Judge about my letter mailed to you about 1-2 weeks ago. As already informed, I won't be able to attend the meeting tomorrow due to some important work at the hospital.
>
> As indicated in the letter, I have strong reservations about the process being unfair and biased and I have no confidence on [sic] Judge Legg to review this case without any prejudice.
>
> Please respond to my earlier letter ASAP.

ECF No. 30-2.[4]

Under 9 U.S.C. §10(a)(3), a court may vacate an arbitration award if the arbitrator is guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown. Defendant's email, on its face, is not a request for a postponement. Instead, Defendant's communication explains that he would not be in attendance, that he did not believe that the arbitrator would review the case "without any prejudice," and that he believed that the process would be "unfair and biased." *See* ECF No. 30-2. In fact, in an earlier letter to the JAMS' case manager, Defendant expressed that he did not intend to participate in the arbitration process. He wrote, on October 31, 2013,

> [a]s far as I know, we have never agreed for JAMS to act as an arbitrator for this case. Further[,] I have not agreed to any services you or your firm have provided or intend to provide. I am therefore not responsible for any payment for these services. I do not believe that JAMS and/or their judges can provide an impartial justice to this case or to us. This has been communicated to the legal representative of Digirad Corporation as well. We are planning to meet in this regard soon.

---

[4] An earlier letter from Defendant to the JAMS' case manager can be found at ECF No. 28-4. In that letter, Defendant does not discuss whether he will be attending the arbitration. *See id.*

ECF No. 28-4. Consistent with the feelings he expressed toward the arbitration, Defendant did not participate in the scheduling conference call on September 30, 2013 or file an arbitration brief. ECF No. 28-2 at 8–9. Under these circumstances, Defendant's email stating that he would not be attending the arbitration was not a request for a postponement. The evidence suggests the opposite. Defendant cannot re-write his deliberate and firm choice not to participate in the arbitration into a request for postponement. Thus, Defendant has not submitted facts showing that he requested a postponement at all, let alone one for good cause. Given that the Defendant did not request a postponement, the arbitrator did not engage in any misconduct in proceeding with the hearing as scheduled.[5] Finding no viable grounds to vacate the award, the November 11, 2013 arbitration award is CONFIRMED.

### B. Attorney's Fees, Costs, and Interest

In addition to the arbitration award, which this Court has not disturbed, Plaintiff requests an additional $9,600.00 in attorney's fees and $2,310.21 in costs. ECF No. 28-1 at 3–4. Section

---

[5] Defendant makes a few additional arguments that the Court will address here summarily. Defendant argues that he cannot be held to the Lease because the Lease is between Digirad and a non-existent entity, Syed Tariq Shahab, MD, PC. ECF No. 30 at 2. This argument fails. As the arbitrator found, "[b]ecause Dr. Shahab signed on behalf of a non-existent corporation, he, personally and individually, is the contracting party under the lease." ECF No. 28-2 at 6; *see also Personal liability of one who assumes to contract as agent for a principal who is fictitious or nonexistent*, 126 A.L.R. 114 ("[I]t is generally held that an agent who contracts in the name of a nonexistent or fictitious purported principal renders himself personally liable on the contract so made."). Defendant also describes an occasion when Digirad failed to appear at Defendant's office on a scheduled day under the Lease. ECF No. 30 at 2. This information, even if true, does not make it more or less likely that the arbitration award should be confirmed. Defendant also urges that the laws of Virginia should apply, which the arbitrator did. *See* ECF No. 28-2 at 5. Finally, Defendant argues that the parties had already reached an agreement, but that "the greedy collection company and an eager ambitious attorney" sabotaged the settlement. ECF No. 30 at 2. However, Defendant notes that Digirad did not accept any settlement money and terminated any settlement negotiations when it did not receive money from Defendant. *Id.* As no settlement ever came to fruition, prior negotiations are not relevant to whether the arbitration award should be confirmed.

21 of the Lease provides "[i]n the event of any action or proceeding (including, without limitation, arbitration) brought by either party against the other under this Lease, the prevailing party shall be entitled to recover all costs and attorneys [sic] fees." ECF No. 28-3 at 6. Further, Section 6.c. explains "all collection expenses, including but not limited to attorneys [sic] fees, arbitration and court costs shall be borne by the Lessee." *Id.* at 2.

Under Virginia law,[6] contractual provisions shifting attorney's fees and costs are valid and enforceable. *See Signature Flight Support Corp. v. Landlow Aviation Ltd. P'ship*, 730 F.Supp. 2d 513, 518 (E.D. Va. 2010) (*citing Mullins v. Richlands Nat'l Bank*, 403 S.E.2d 334 (Va. 1991)). However, the amount awarded must be reasonable under the circumstances, given the time consumed, the effort expended, the nature of services rendered, and other attending circumstances. *Id.* at 519 n.3 (citation omitted). Courts typically start with the lodestar amount, which is ". . . the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

In this case, the Business & Technology Group, specifically Mr. Young, represented Digirad in the arbitration proceeding and represented Digirad, and now Goldman, in the proceedings before this Court. Plaintiff retained the Business & Technology Group on a contingent fee based upon twenty-five percent of the gross amount of any amount recovered, before the payment of expenses, with reimbursement of costs. ECF No. 28-5 at 2. Mr. Young estimates that the value of the attorney's fees from the date of the arbitration (November 11,

---

[6] The Lease provides that it "shall be governed by the state laws in the state where the services are delivered." ECF No. 28-3 at 7. The Court applies Virginia law because Digirad provided services to Defendant's medical office in Fall Church, Virginia. *Id.* at 3.

2013) through November 20, 2014 is $9,600.00, or 25.60 hours at the rate of $375.00 per hour. *Id.* at 3.

The Court first looks at whether the hourly rate is reasonable. An hourly rate is reasonable if it is ". . . in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984). Mr. Young has practiced in Maryland since 1996. ECF No. 28-5 at 3. He attests that the contingency fee charged is typical in Maryland for matters of this type before this Court. *Id.* at 2–3. He also attests that the hourly rate of $375.00 per hour is typical for attorneys in the Maryland legal community with his experience. *Id.* at 3. Mr. Young's $375.00 hourly rate is in accordance with this Court's rules and guidelines for determining attorney's fees, which notes a guideline range of $275.00-$425.00 per hour for attorneys with fifteen to nineteen years of experience. *See* Loc. R. App. B.3. Thus, the Court is in agreement with the arbitrator that the hourly rate of $375.00 is reasonable for an attorney of Mr. Young's experience and expertise. *See* ECF No. 28-2 at 9–10.

The Court turns next to the reasonableness of the time expended. Mr. Young has been the Plaintiff's attorney in this case since December 2013. *See* ECF No. 1. He filed two petitions to confirm the arbitration award, filed a motion to modify the scheduling and discovery orders, engaged in two phone conferences with the Court, attended a settlement conference, provided the Court with a status report, propounded interrogatories and requests for production of documents on Defendant, and responded to Defendant's motions to amend his answer and for extension of time. ECF Nos. 1, 10, 14, 22–24, & 28. The time expenditure of 25.60 hours is reasonable given the work completed.

Plaintiff has also requested additional costs. Plaintiff attached a spreadsheet explaining the costs incurred to file and maintain the litigation, which are reasonable and relate generally to mail service and filing fees. ECF No. 28-5 at 4; *See* Loc. R. App. B.4 ("Generally, reasonable out-of-pocket expenses (including long-distance telephone calls, express and overnight delivery services, computerized on-line research and faxes) are compensable at actual cost.")). These litigation costs total $586.52. Further, Plaintiff has requested that the Court award the travel costs of $1,723.69 incurred by Plaintiff's chief executive officer, who traveled from Tucson, Arizona to attend the settlement conference. ECF No. 28-1 at 3–4. Because "a party representative having full settlement authority" must attend any settlement conference held by the Court, Loc. R. 607.3, the travel costs of Plaintiff's chief executive officer are reasonable expenses incurred as a result of this litigation. The Court finds that the amount of $1,723.69 for travel costs from Tucson, Arizona to Greenbelt, Maryland, which Plaintiff has itemized at ECF No. 28-7 at 3, is reasonable.

Lastly, the Court explains how interest is to be calculated in this case. "An arbitration award under the Federal Arbitration Act may include pre-award interest on the compensatory portions of an award when the amount of the underlying liability can be ascertained with some certainty." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 148 (4th Cir. 1993). Additionally, the arbitrator may order post-award interest. *See* 2 Domke on Com. Arb. §§ 35:6 & 44:1 (*citing, e.g., Waterside Ocean Nav. Co., Inc. v. Int'l Nav. Ltd.*, 737 F.2d 150 (2nd Cir 1984); *Fort Hill Builders v. Nat'l Grange Mut. Ins. Co.*, 866 F.2d 11 (1st Cir. 1989)); *see also Wachovia Secs., LLC v. Brand*, 2010 WL 4366833 at * 2 (D.S.C. Oct. 27, 2010), *aff'd* 671 F.3d 472 (4th Cir. 2012) ("[T]his Court's Order confirmed the arbitration award in its entirety. Therefore, it is reasonable to conclude that if the Award included an award of interest, then this

Court, by confirming the arbitration award, confirmed the award of post-arbitration interest."). In this case, the arbitrator awarded interest on the principal amount owed, calculated at the rate of six percent, until the principal is paid. *See* ECF No. 28-2 at 3. Thus, Plaintiff is entitled to interest on the principal amount of the arbitration award (excluding interest) at the rate of six percent pursuant to Virginia Code § 6.2-302(B) until this Court enters a judgment.

Additionally, as in all cases, Plaintiff will be entitled to post-judgment interest. *See* 28 U.S.C.A. § 1961. This interest will be on the entire judgment (including interest, attorney's fees, and costs) from the date of this judgment at the prevailing rate[7] until paid. 28 U.S.C.A. § 1961; *see Regale, Inc. v. Thee Dollhouse Productions N.C., Inc.*, 2011 WL 552184 at *1 (E.D.N.C. Feb. 9, 2011) (amending judgment to award post-judgment interest at the federal rate) (*citing, e.g., Fidelity Fed. Bank v. Durga Ma Corp.,* 387 F.3d 1021, 1024 (9th Cir. 2004) (holding that "once an arbitration award is confirmed in federal court, the rate specified by § 1961 applies . . . even if the arbitration award purported to grant post-judgment interest [at a different rate]"); *United Cmty. Bank v. McCarthy*, 2010 WL 2723726 at *2–4 (W.D.N.C. July 8, 2010) (awarding (1) post-arbitration interest on the principal amount of the arbitration award at the rate specified by state statute and (2) post-judgment interest on the entire arbitration award at the federal interest rate); *Cf. Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 111–13 (4th Cir. 1989) (finding federal post-judgment interest statute is used to calculate post-judgment interest in a diversity action).

---

[7] The interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." 28 U.S.C.A. § 1961 (a); *see* http://www.federalreserve.gov/releases/h15/current/.

**IV. CONCLUSION**

For the reasons stated above, Plaintiff's Motion to Confirm Arbitration Award, ECF No. 28, is GRANTED. Plaintiff is awarded an additional $9,600.00 in attorney's fees and $2,310.21 in costs. Interest shall be paid on the principal amount at the rate of six percent until the entry of this judgment. After entry, post-judgment interest shall be paid on the entire judgment pursuant to 28 U.S.C.A. § 1961 at the prevailing rate until paid.

A separate Order shall issue.

Dated: January 22, 2015

GEORGE J. HAZEL
United States District Judge

12